UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| GEORGE BARISICH, individually and on behalf of all others similarly situated, and<br>UNITED COMMERCIAL FISHERMAN'S ASSOCIATION, INC., individually and on behalf of all others similarly situated,<br><br>  Plaintiffs<br><br>Versus<br><br>BP, P.L.C., ET AL.<br><br>  Defendants | CIVIL ACTION NO. 10-01324<br><br>SECTION "J"<br>Judge Carl J. Barbier<br><br>DIVISION (1)<br>Mag. Judge Sally Shushan |

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION FOR
STAY OF PROCEEDINGS PENDING TRANSFER BY THE JUDICIAL
<u>PANEL ON MULTIDISTRICT LITIGATION</u>

MAY IT PLEASE THE COURT:

Plaintiffs George Barisich and United Commercial Fisherman's Association, Inc., individually and on behalf of all others similarly situated, oppose the motion to stay filed by BP America Production Company and BP Exploration & Production Inc. (collectively "BP"). With no end in sight, the oil discharging from BP's oil well continues to spread to coastal areas throughout the Gulf Coast, impacting the fishermen who are putative members of this class and the families that rely upon them. A stay in this matter would hinder the ability of Plaintiffs and other fishermen as wards of admiralty to seek the protection of this Court's supervision. Further,

-1-

the Judicial Panel on Multidistrict Litigation ("JPML") has not yet agreed to consolidate the cases related to the oil spill. Even if the JPML does consolidate pursuant to 28 U.S.C. § 1407, there is no requirement or necessity for staying proceedings in this Court.

### I.   Introduction

This case arises from the explosion of the Deepwater Horizon and the resulting oil discharge that has spread throughout the Gulf of Mexico. The Deepwater Horizon was a floating oil rig operated by defendants BP, plc, BP Exploration and Production Inc. and/or BP American Production Company (collectively "BP") approximately 50 miles southeast of Venice, Louisiana in the Gulf of Mexico. At approximately 10 p.m. on April 20, 2010, while the vessel, Deepwater Horizon, was performing drilling operations for crude oil off the coast of Louisiana at its Macondo Prospect, an apparent "blow-out" of the well occurred and a fiery explosion of the rig resulted.

With the failure of the well's casing and the concurrent failure of the blow-out preventor mechanism (the "BOP"), the well began to release, leak and/or discharge oil directly into the Gulf of Mexico. The well continues to release, leak and/or discharge at least 210,000 gallons of oil into the Gulf of Mexico on a daily basis. The plume has expanded to thousands of square miles and has already contaminated barrier islands in Louisiana and Alabama. The oil that is being released is an extremely hazardous and/or toxic substance which poses a significant risk to the wetlands and marine life in the Louisiana Coastal Zone. A large and expanding mass of oil continues to spread to the Louisiana coastline every day and threatens the nation's largest remaining wetland areas and vulnerable habitat of fish, oysters, crabs, shrimp, birds and other precious wildlife.

On July 29, 2010, the JPML will hear motions to consolidate this case and other related cases pursuant to 28 U.S.C. § 1407.

## II. This Court Retains Jurisdiction While the Transfer Motion is Pending.

The JPML has previously ruled that a pending motion for transfer before the Panel does not limit the jurisdiction of the district court in which the case is then pending:

> The mere pendency of a motion before the Panel does not affect or suspend orders and discovery proceedings in the transferor district court and does not in any way limit the jurisdiction of the transferor court to rule upon matters properly presented to it for decision.

See *United States ex rel. Cosens v. St. Francis Hosp.*, 241 F. Supp. 2d 223, 225 (E.D.N.Y. 2002) (quoting *In re Four Seasons Secs. Law Litig.*, 362 F. Supp. 574, 575 n.2 (J.P.M.L. 1973)).

Consistently, Rule 1.5 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation clearly states:

> The pendency of a motion, order to show cause, conditional transfer order or conditional remand order before the Panel concerning transfer or remand of an action pursuant to 28 U.S.C. § 1407 does not affect or suspend orders and pretrial proceedings in the district court in which the action is pending and does not in any way limit the pretrial jurisdiction of that court.

This point is buttressed by the *Manual for Complex Litigation,* which provides:

> The transferor court should not automatically stay discovery . . . Nor should the court automatically postpone rulings on pending motions, or generally suspend further proceedings.

*Manual for Complex Litigation, Fourth,* § 20.131 (2004).

Importantly, the Panel has said:

> The Panel's experience indicates that the use of stay orders by the district courts, particularly in the area of discovery, is usually undesirable. Any discovery obtained prior to the Panel decision will benefit the parties to the action if transfer is denied and will presumably be made available to all other parties if transfer is ordered.

*In re Penn Central Secs. Litig.*, 333 F. Supp. 382, 384 (J.P.M.L. 1971); *see also The Mechanics of Motion Practice Before the Judicial Panel on Multidistrict Litigation*, 175 F.R.D. 589 (1998) ("[D]istrict courts will commonly refuse to grant a motion to stay discovery pending the outcome of a Panel transfer motion.").

    **II.**    **A Stay Would Unduly Prejudice Plaintiffs, but Allowing the Case to Proceed Would Promote Judicial Economy Without Any Harm to Defendants.**

In deciding whether such a stay is necessary, competing interests must be weighed in an attempt to maintain an even balance. *See Landis v. American Water Works & Elec. Co.*, 299 U.S. 248, 254-55 (1936). Courts generally apply a three-factor test when deciding whether a stay should be granted, considering: "1) hardship and inequity on the moving party without a stay; 2) prejudice the non-moving party will suffer if a stay is granted; and 3) judicial economy." *See Falgoust v. Microsoft Corp.*, No. 00-0779, 2000 WL 462919, at *2 (E.D. La. April 19, 2000) (citations omitted).

Defendants have failed to show that any of these factors, much less a balance among all three, favor a stay in this case.

In the context of this case, the second factor – prejudice – is paramount. Given the ongoing nature of the harm resulting from the oil spill, granting a stay would risk substantial prejudice to Plaintiffs, whose case would be at a standstill until the Panel hears and rules upon the motions for transfer. The Panel will not even hear the pending transfer motions for more than two-and-a-half months, on July 29, 2010, and it is unknown how long after that a decision can be expected.

In the meantime, oil continues to flood the Gulf at an alarming rate, and Plaintiffs may need to take actions – such as emergency, real-time discovery related to the potential cause(s) of

this disaster and Defendants' efforts to mitigate the mounting damages – for which Plaintiffs may need to seek court intervention. Moreover, given the ongoing nature of this controversy, Plaintiffs may also need to seek injunctive or other immediate relief that cannot be put off for the better part of three months while the parties await a hearing before the Panel. Putting the case on hold would tie Plaintiffs' hands and unduly prejudice their ability to collect evidence as it develops or seek emergency relief through the court that they may need to help moderate their damages.[1]

By contrast, Defendants have not established that they would suffer any undue hardship if this action is not stayed. While Defendants complain of inconsistent discovery obligations, no discovery has been served yet in this case. Moreover, given that the oil spill occurred only recently, this and other similar cases are in their nascent stages. Regardless of whether, where or when the oil spill cases are coordinated or consolidated, at this early point, Defendants will need to undertake many of the same actions, such as preserving discovery, with respect to all cases pending against them. Further, Defendants' speculation about inconsistent pretrial rulings is overshadowed by the magnitude and nature of this ongoing catastrophe and the prejudice, discussed above, that would result to Plaintiffs should their case suddenly be frozen for the next several months.

Finally, judicial economy will be served by allowing proceedings to continue in this Court. Any proceedings in this action will benefit all parties, even if the Panel subsequently coordinates or consolidates this case with other oil spill cases, as it may then be shared with other plaintiffs involved in similar actions.

---

[1] Plaintiffs have already sought Court intervention in this matter regarding BP's claims process (Doc. 19). Also, in the related *Barisich* action, civil action no. 10-1316, plaintiffs have sought various forms of injunctive relief related to BP's Master Vessel Charter Agreements.

## IV. The Cases that Defendants Cite are Distinguishable.

None of the cases that Defendants cite in support of a stay involved the kind of ongoing, man-made disaster that is involved here. The oil that continues to pour into the Gulf of Mexico may ultimately be the largest, man-made environmental catastrophe in the history of the United States, and perhaps the planet. The cases that the BP Defendants cite, by contrast, involved matters such as the sale of life insurance policies,[2] the fraudulent marketing and underwriting of "auction-rate" bonds,[3] a product liability dispute,[4] antitrust violations,[5] and discrimination.[6]

Defendants are incorrect in their suggestion that *Tench* involved the same "circumstances present here." (BP Brf. at pp.3-4). *Tench* involved the deceptive marketing of life insurance policies, *see* 1999 WL 1044923, at *1, and was thus in no way comparable to the facts of this case. In addition, in *Tench,* similar cases had previously been centralized before a different judge who had been handling them for more than three years, and the Panel was scheduled to hear argument on transfer within a week, such that a stay did not cause any delay of the plaintiff's case. *Id.* at *1-2. By contrast, the hearing scheduled in this case is more than two-and-a-half months away and a stay would cause progress in this case to halt for an unreasonable amount of time when considering the fact that the damages here are continuing to unfold at a dramatic rate.

---

[2] *See Tench v. Jackson Nat'l Life Ins. Co.,* No. 99-5182, 1999 WL 1044923, at *1 (N.D. Ill. Nov. 12, 1999); *Good v. Prudential Ins. Co.,* 5 F. Supp. 2d 804, 806 (N.D. Cal. 1998).

[3] *Louisiana Stadium & Exposition Dist. v. Fin. Guaranty Ins. Co.,* No. 09-235, 2009 WL 926982, at *1 (E.D. La. April 2, 2009).

[4] *Kennedy v. Novartis Pharmas. Corp.,* No. 02-2331, 2002 WL 31051601, at *1 (E.D. La. Sept. 12, 2002).

[5] *Falgoust,* 2000 WL 462919, at *1; *Aikins v. Microsoft Corp.,* No. 00-0242, 2000 WL 310391, at *1 (E.D. La. Mar. 24, 2000).

[6] *Rivers v. The Walt Disney Co.,* 980 F. Supp. 1358, 1360 (C.D. Cal. 1997).

*Good*, much like *Tench*, also involved misrepresentations in the sale of life insurance, an MDL action had already been centralized, and the plaintiff's case had been related for transfer to the court handling that ongoing action. 5 F. Supp. 2d at 806. Moreover, the district court considered and denied a motion to remand *before* granting a stay, thereby rendering moot the plaintiff's primary argument in opposition to a stay, and also expressed confidence that the stay would be brief. *Id.* at 809.

In *Louisiana Stadium,* involving an "auction-rate" bond dispute, the court determined that a stay would not result in any prejudice, because submissions to the Panel were due later the same month, and a ruling was expected "shortly thereafter." 2009 WL 926982, at *1. The court also anticipated that the case would be transferred and expressed concern that the court's spending time familiarizing itself with complex financial transactions that it would ultimately not rule upon would waste judicial resources. *Id.*

*Kennedy* was a product liability case involving phenylpropanolamine, a substance found in various over-the-counter nasal decongestant products. 2002 WL 31051601, at *1. Like *Trench* and *Good,* an MDL had already been established, the case was subject to a conditional transfer order, and a decision on transfer was anticipated shortly (within as little as three, but no more than four, weeks). *Id.*

In *Falgoust*, an antitrust case against Microsoft corporation, the plaintiffs had failed to show any significant prejudice. 2000 WL 462919, at *2. By contrast, Plaintiffs in this case would suffer substantial prejudice if their case were to come to a halt, stripping them of the ability to make any progress during this critical time, as events relevant to their case continue to take place.

For its part, *Aikins*, involved the same controversy as *Falgoust*, and it was decided on a similar, distinguishable basis. *See* 2000 WL 310391, at *1.

Finally, in *Rivers,* the *plaintiffs* moved for the stay, and the defendants – in stark contrast with Plaintiffs here – made no argument that a stay would cause them any prejudice. 980 F. Supp. 1360.

Accordingly, none of the cases that Defendants cite are comparable to this case and none support the conclusion that this case should be stayed.

## Conclusion

For all of the above reasons, Plaintiffs George Barisich and United Commercial Fisherman's Association, Inc., individually and on behalf of all others similarly situated, respectfully request that this Honorable Court deny Defendants' Motion for Stay of Proceedings Pending Transfer by the Judicial Panel on Multidistrict Litigation.

JPML Rule 1.5 provides that the pendency of a conditional transfer order "does not affect or suspend orders and pretrial proceedings in the district court in which the action is pending and does not in any way limit the pretrial jurisdiction of that court."

Respectfully submitted,

s/James M. Garner
**JAMES M. GARNER (# 19589)**
**TIMOTHY B. FRANCIS (# 14973)**
**JOSHUA S. FORCE (# 21975)**
**SHARONDA R. WILLIAMS (# 28809)**
**EMMA ELIZABETH ANTIN DASCHBACH (#27358)**
Sher Garner Cahill Richter Klein & Hilbert, L.L.C.
909 Poydras Street, 28th Floor
New Orleans, Louisiana 70112-1033
Telephone:	(504) 299-2100
Facsimile:	(504) 299-2300

GLADSTONE N. JONES, III (# 22221)
EBERHARD D. GARRISON (# 22058)
KEVIN E. HUDDELL (# 26930)
H.S. BARTLETT III (# 26795)
JACQUELINE A. STUMP (# 31981)
Jones, Swanson, Huddell & Garrison, L.L.C.
Pan-American Life Center
601 Poydras Street, Suite 2655
New Orleans, LA 70130
Telephone:    (504) 523-2500
Facsimile:    (504) 523-2508

STUART H. SMITH (# 17805)
MICHAEL G. STAG (# 23314)
Smith Stag, L.L.C.
365 Canal Street, Suite 2850
New Orleans, LA 70130
Telephone:    (504) 593-9600
Facsimile:    (504) 593-9601

VAL PATRICK EXNICIOS (#19563)
Liska, Exnicios & Nungesser
One Canal Place 22nd Floor
365 Canal Street, Ste. 2290
New Orleans, LA. 70130
Telephone:    (504) 410-9611
Facsimile:    (504) 410-9937

### CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on all counsel of record through this Court's electronic filing and notification system, this 18th day of May, 2010.

s/James M. Garner